KATIE ANN LOCKLEAR, ADMINISTRATRIX OF JOHN LOCKLEAR,
v. S. A. PAUL ET ALS.

(Filed 22 October, 1913.)

**1. Trespass—Title—Adverse Possession—Color—General Reputation—Hearsay Evidence.**

The rule that, under certain conditions, parol evidence of general reputation is admissible on the question of boundary, or as to identification of a tract of land or of giving it a general placing when it had been otherwise identified and sufficiently described, does not apply where, in an action of trespass, depending upon an issue as to title to the lands, a party relies on adverse possession under color of title, and seeks to show general reputation of ownership; for evidence of this character does not fall within the exception to the rule that hearsay evidence is inadmissible, and is further objectionable as an expression of an opinion by the witness upon the issue involved and as throwing into the jury box the weight of public opinion.

**2. Trespass—Title—Deeds and Conveyances—Trespass by Grantee —Grantor's Liability.**

One who attempts to convey standing timber on lands ascertained to belong to another, with the view and purpose of having same manufactured into lumber, in an action involving an issue as to title is responsible in damages, with his grantee, to the owner for damages done by the latter in trespassing upon the lands and cutting the timber under the rights purported to have been conveyed in the deed.

APPEAL by defendant from *Ferguson, J.,* at May Term, 1913, of ROBESON.

This action was to recover damages for the wrongful cutting of timber on the part of defendants and was made dependent, chiefly, on the issue as to title to the land where the cutting occurred.

The cause was before the Court at Spring Term, 1912, on appeal of plaintiffs from a judgment of nonsuit, and will be found reported in 159 N. C., 236. The judgment of nonsuit was reversed for reasons appearing in the opinion by *Associate Justice Walker,* and this opinion having been certified down, the case was tried on the issues of title, trespass on the part of defendants, statute of limitations, and damages.

There was evidence on part of plaintiff tending to show title in ·John Locklear, plaintiff's intestate, by reason of adverse occupation and assertion of ownership and up to known and visible lines and boundaries covering *locus in quo.* Evidence *contra* on the part of defendants.

Verdict and judgment for plaintiff, and defendants excepted and appealed.

*McNeill & McNeill and Britt & Britt for plaintiff.*
*McLean, Varser & McLean for defendant Paul.*
*McIntyre, Lawrence & Proctor for Planing Mill, defendant.*

HOKE, J., after stating the case: On the trial of the issues the following evidence was admitted, over objection by defendants to both questions and answers, and exceptions duly noted:

"Yes, I know who was reputed to be the owner of the land between these lines I have described.

"Question: Whose was it?

"Answer: The country all around knowed who it was.

"Question: Whose land was it reputed to be?

"Answer: John Locklear's."

It has been held in numerous cases with us that, under certain circumstances, evidence of general reputation is admissible, on questions of private boundary. In one of the later decisions on the subject, *Bland v. Beasley,* 140 N. C., 630, the Court said: "It is true that evidence of both hearsay and common reputation is received with us in cases of disputed private boundary, but this is an exception to the general rule which requires that the rights of litigants must be determined on sworn testimony. Such testimony, in England, is not admitted in questions of private right, and the principle was only adopted here from necessity, and where, from lapse of time or changing conditions, it has become 'difficult, if not impossible,' that better evidence should be had." And in the same opinion, quoting with approval from some of the former decisions, it was said further: "This reputation, whether by parol or otherwise, should have its origin at a time comparatively remote and always *ante litem motam.* Second, it should attach itself to some monument of boundary or natural object, or be fortified by

evidence of occupation and acquiescence tending to give the land some fixed and definite location."

Assuming that the other conditions for the reception of such evidence have been met, it would doubtless be a correct application of the principle, on the question of identifying a tract of land or of giving the same a general placing when it had been otherwise identified and sufficiently described, to hear evidence to the effect that a given tract of land was generally known or reputed to be "the old Locklear tract" or "old Paul homestead" or the like; but the testimony received in this instance was not of that character. There was no question here of identity of tracts or the correct general location of the *locus in quo*. On the evidence, the right of these parties was, in a large measure, made to depend on whether John Locklear had occupied the tract of land claimed by him adversely and under known and visible lines and boundaries for a sufficient length of time to mature his title, and, in our judgment, this evidence, in the form in which it was presented, was not relevant on the question of boundary, but was an opinion on the title, and had the effect of throwing into the jury box the force and effect of public opinion on that issue. Not coming, therefore, under this principle of evidence on boundary which is an exception to the more general rule, it was incompetent as hearsay testimony, and was further objectionable as being an opinion bearing directly on the merits of the controversy as embraced in the entire issue. *Deppe v. R. R.,* 154 N. C., 523; *Smith v. Smith,* 117 N. C., 326; Lawson on Expert Opinion Evidence, p. 557.

We were referred by counsel to *Toole v. Peterson,* 31 N. C., 180, as being an authority against this position, but we do not so understand the decision. In that case, being an action to recover certain lots in the city of Wilmington, a grant to John Watson or Whatson, bearing date in 1735, was located and shown to include the town of Newton, which was the former name of Wilmington. In the course of the trial, it became desirable to show the identity of the two towns, with the view of proving title to the lots out of the State, and proof was offered and rejected that for sixty or seventy years there was a

general reputation that the city of Wilmington was situate within the bounds of the John Watson grant. On appeal, the evidence was held competent and a new trial was granted. Here was a case of disputed identity, and the evidence was clearly relevant on the question of location, and was not, as in our case, an opinion on the .title.

The other and numerous questions presented on the appeal are not dealt with, as they are chiefly rulings of the court on questions of evidence, and may not arise on a further hearing of the case. It may be well, however, to refer to an exception that the defendant Sarah A. Paul is not responsible for the trespass complained of, inasmuch as she had made an outright conveyance of the. timber to her codefendant, the planing mills, and this company alone had done the cutting. The deed conveyed the timber, with rights of way, etc., required to remove the same. It clearly contemplated and authorized the acts complained of, and, if trespass is established against the company, the grantor in the deed is also responsible. *Dreyer v. Ming,* 23 Mo., 434.

For the error indicated, there must be a new trial of the cause, and it is so ordered.

New trial.